```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARCOS D. COSME                 : CIVIL ACTION
                                :
     vs.                        :
                                : NO. 07-CV-3153
STEVE DURHAM, 99 WEST, INC.,    :
d/b/a 99 RESTAURANT & PUB,      :
TC & C ENTERPRISES, INC.,       :
d/b/a O'CHARLIES and d/b/a      :
O'CHARLEY'S, INC.,              :
O'CHARLEY'S, INC. ENTERPRISE,   :
d/b/a O'CHARLEY'S, INC.         :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                   **February 4, 2008**

Defendants now move to dismiss and/or strike the Plaintiff's Complaint pursuant to Fed.R.Civ.P.Nos. 12(b)(6), 12(f) and/or 56. For the reasons discussed in the following paragraphs, the motion shall be partially granted.

**Factual Background**

Plaintiff's complaint rather scantily alleges that on April 4, 2006 he was injured while working (presumably at an O'Charley's or 99 Restaurant) at an undisclosed location somewhere within the confines of this district. As a result of this injury, Plaintiff avers that he was "unable to fully return to work," and that he filed a worker's compensation claim pursuant to the Pennsylvania Worker's Compensation Act, 77 P.S. §1, *et. seq.* "prior to or around September 9, 2006."

(Complaint, ¶s 3, 10, 11).  "Thereafter, Plaintiff, with permission of his manager, Joe Duckworth, had a beer." (Complaint, ¶12).  "Solely as a pretext for Defendants' wrongful termination of Plaintiff for his claim, on or about September 18, 2006, Defendant, through its manager, Steve Durham, fired Plaintiff for drinking" thereby causing plaintiff various injuries and causing him monetary and other damages.  (Complaint, ¶s 13 - 16).  As a consequence of these actions, Plaintiff filed this lawsuit on August 2, 2007 against these defendants claiming negligence, wrongful termination/discharge, discrimination and retaliation and breach of contract and seeking compensatory, punitive, statutory and treble damages and injunctive relief.

A short time later, Defendants filed this motion alleging that dismissal of the action is appropriate because: (1) the dispute is covered by an arbitration provision; (2) the complaint fails to state a cause of action upon which relief may be granted; and (3) neither statutory, treble or punitive damages nor injunctive relief is available under any of the theories on which the plaintiff seeks to recover.

### **Standards Governing Motions to Dismiss**

It has long been the rule that in considering motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Krantz v.

Prudential Inv. Fund Mgmt., LLC, 305 F.3d 140, 142 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)(internal quotations omitted).  See Also: Ford v. Schering-Plough Corp., 145 F.3d 601, 604 (3d Cir. 1998).  In so doing, the court must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted.  See, Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims.  In re Rockefeller Center Properties, Inc., 311 F.3d 198, 215 (3d Cir. 2002).

## Discussion

**1.  Motion to Dismiss/Compel Arbitration or Mediation**

Defendants first assert that because the plaintiff purportedly agreed to submit "any controversy or dispute arising out of or in connection with ... [his] ... employment... to mediation and/or arbitration," this matter is properly dismissed as the plaintiff is free to seek relief in either or both of those forums.

The Federal Arbitration Act, 9 U.S.C. §1, *et. seq.* has established a strong policy in favor of arbitration; it requires rigorous enforcement of arbitration agreements.  Mintze v. American Financial Services, Inc., 434 F.3d 222, 229 (3d Cir. 2006), citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).  The FAA federalizes arbitration law and creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.  John Hancock Mutual Life Insurance Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998).  Specifically, Section 2 of the Act provides in relevant part:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."  9 U.S.C. § 2.

If a party to a binding arbitration agreement is sued in federal court on a claim that the plaintiff has agreed to arbitrate, he is entitled under the FAA to a stay of the court proceeding pending arbitration and an order compelling arbitration.  9 U.S.C. §§ 3-4;  Alexander v. Anthony International, L.P., 341 F.2d 256, 263 (3d Cir. 2003).   If all of the claims are arbitrable, a court may dismiss the entire action.  See Blair v. Scott Specialty Gases, 283 F.3d 595 (3d

Cir. 2002).

All that having been said, however, arbitration is also a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. <u>Howan v. Dean Witter Reynolds,</u> 537 U.S. 79, 83, 123 S.Ct. 588, 591, 154 L.Ed.2d 491, 496-497 (2002).  <u>See Also</u>, <u>Johnson v. Pennsylvania National Insurance Co.</u>, 527 Pa. 504, 508, 594 A.2d 296, 299 (1991); <u>Lincoln System of Education v. Lincoln Association of University Professors</u>, 467 Pa. 112, 119, 354 A.2d 576, 580 (1976).  The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the "question of arbitrability," is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." <u>Howan</u>, <u>supra</u>., quoting <u>AT & T Technologies, Inc. v. Communications Workers</u>, 475 U.S.643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Before directing the parties to proceed to arbitration, the court must ascertain whether the parties entered a valid agreement to arbitrate by looking to the relevant state law of contracts. <u>Edwards v. Hovensa, LLC</u>, 497 F.3d 355, 362 (3d Cir. 2007); <u>Digital Signal, Inc. v. Voicestream Wireless Corp.</u>, No. 04-2696, 156 Fed. Appx. 485, 487 (3d Cir. Dec. 5, 2005).

Recently, our colleague Judge Savage had occasion to consider this very same issue in <u>Hudyka v. Sunoco, Inc.</u>, 474 F.Supp.2d 712 (E.D. Pa. 2007) and, as his summary of Pennsylvania

law is so comprehensive, we shall borrow it here:

> To form an enforceable contract, there must be an offer, acceptance and consideration. Jenkins v. County of Schuylkill, 441 Pa. Super. 642, 658 A.2d 380, 383 (1995). The offer and the acceptance must include the essential terms that both parties intend to be binding. In re Estate of Hall, 1999 Pa. Super. 119, 731 A.2d 617, 621 (Pa. Super. 1999). The essential terms must be definite enough to provide a basis for enforcing the agreement. Biddle v. Johnsonbaugh, 444 Pa. Super. 450, 664 A.2d 159, 163 (1995). In other words, if the terms are indefinite, there is no assent and, consequently, no agreement. The "test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." Channel Home Centers v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986)(citing Lombardo v. Gasparri Excavating Co., 385 Pa. 388, 123 A.2d 663, 666 (1956). Summarizing, under Pennsylvania law, a valid contract requires that: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration. Blair, 283 F.3d at 603.
>
> Agreements to arbitrate in Pennsylvania are upheld only where it is clear that the parties have agreed to arbitrate their disputes – employment and otherwise – in a clear and unmistakable manner. Quiles v. Financial Exchange Co., 2005 Pa. Super. 250, 879 A.2d 281, 287 (Pa. Super. 2005). Any waiver of an employee's statutory right to a judicial forum to assert employment claims must be clear and unmistakable. General Electric Co. v. Deutz, 270 F.3d 144, 154 (3d Cir. 2001)(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Without knowing the terms of the contract, one cannot accept them. Quiles, 879 A.2d at 288. Therefore, an employee cannot validly agree to arbitrate his claims unless he has been advised of the arbitration terms.

Hudyka, 474 F.Supp.2d at 716.

In this case, the clause upon which defendants rely in support of their request for dismissal reads as follows:

*Alternative Dispute Resolution*

I, the undersigned party, hereby agree to submit any controversy or dispute arising out of or in connection with my compensation, employment or termination of employment, including but not limited to any statutory claims, such as discrimination or harassment to mediation and/or arbitration.

- ✓ I understand that this agreement to mediate and/or arbitrate my employment related claims does not interfere or change my status as an employee at will, and either I or the Ninety Nine Restaurant & Pub (Ninety Nine) can terminate my employment at any time, with or without cause.

- ✓ I understand that mediation and/or arbitration is administered through the American Arbitration Association (AAA) under the National Rules for the Resolution of Employment Disputes.

- ✓ I understand that if I need to initiate mediation and/or arbitration, I need to call Human Resources and request a copy of the "National Rules for the Resolution of Employment Disputes" and a "Request for Mediation/Arbitration form." Once I complete this form, I sent it back to Human Resources along with my check (for the appropriate amount) made payable to "American Arbitration Association." My request form, along with all other necessary documentation will be forwarded to the American Arbitration Association for processing.

- ✓ Mediation/Arbitration shall take place in or near the city in which the Employee is or was last employed by the Company.

- ✓ I understand that judgment upon the award rendered by the mediator(s) or arbitrator(s) may be entered by any court having jurisdiction thereof.

- ✓ Employee and Ninety Nine mutually agree that any and all claims or disputes Employee may have now or in the future with or against Ninety Nine, any parent or subsidiary of, or any company affiliated with Ninety Nine, or any of its subsidiaries, and their officers, directors, managers, employees, or agents acting in their capacity as such or otherwise, or that Ninety

>          Nine may have now or in the future with or against
>          Employee, may be heard by a neutral mediator selected
>          from the roster of employment dispute mediators of the
>          American Arbitration Association ("AAA") in accordance
>          with the National Rules for the Resolution of
>          Employment Disputes.
>
> ✓   Nothing in this Agreement shall be construed as
>     prohibiting the Employee from filing an administrative
>     charge of discrimination, an unfair labor practice, or
>     other alleged violation of law with the Equal
>     Employment Opportunity Commission, the National Labor
>     Relations Board, or any other government agency acting
>     pursuant to federal or state law.
>
> ✓   Employee acknowledges and agrees that Ninety Nine
>     engages in transactions involving interstate commerce
>     and that his/her employment involves such commerce.

We have absolutely no evidence in this case from which we can ascertain the circumstances under which this clause was presented to the plaintiff and executed.  The agreement itself is silent as to how or what was offered by either party or as to what consideration, if any, was provided to support it.  We thus cannot discern whether the parties intended to be bound by this agreement and we therefore cannot find that it constitutes a valid agreement to arbitrate under Pennsylvania law.

Furthermore, the agreement is also silent as to whether the submission of disputes such as the one presented by the plaintiff's complaint in this case is mandated by this agreement. Indeed, it appears that the parties agreed only that any and all claims which the employee/plaintiff "may have now or in the future with or against [the defendants] *may* be heard by a neutral mediator..."  Thus, even assuming *arguendo* that the parties

8

entered into a valid and enforceable agreement, it nevertheless does not appear that this agreement *requires* submission of all employment-related disputes to arbitration or mediation. Accordingly, we decline to dismiss the plaintiff's complaint on the basis of the foregoing arbitration/mediation agreement.

**2.  Motion to Dismiss Plaintiff's Claim for Negligence**.

In Pennsylvania, the elements of a cause of action based upon negligence are:

> (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;
>
> (2) defendant's failure to conform to the standard required;
>
> (3) a causal connection between the conduct and the resulting injury; and
>
> (4) actual loss or damage resulting to the plaintiff.

Northwestern Mutual Life Insurance Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); Atcovitz v. Gulph Mills Tennis Club, 571 Pa. 580, 586, 812 A.2d 1218, 1222 (2002).  The existence of a duty is a matter of law for the court to decide.  R.W. v. Manzek, 585 Pa. 335, 346, 888 A.2d 740, 746 (2005).  In deciding whether to impose a duty, the Pennsylvania courts consider the following five factors: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing the duty; and (5) the overall public interest in the

proposed solution.  R.W., 585 Pa. at 347, 888 A.2d at 747.

In this case, the complaint is silent as to the nature of the duty owed by the defendants to the plaintiff nor is it clear how the defendants breached that duty by terminating the plaintiff's employment.  It should further be noted that the Pennsylvania's Worker's Compensation Statute provides the sole remedy for personal injuries allegedly sustained during the course of employment.  Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1998) citing, *inter alia*, 77 P.S. §481(a); Clinkscales v. Children's Hospital of Philadelphia, Civ. A. No. 06-3919, 2007 U.S. Dist. LEXIS 83930, *33 (E.D. Pa. Nov. 9, 2007).  For these reasons, we find that the plaintiff has failed to state a cause of action for negligence under Pennsylvania law.  Count I of the complaint is dismissed.

    **3.  Motion to Dismiss Plaintiff's Breach of Contract Claim**.

It is of course, axiomatic that a breach of contract claim may not be maintained in the absence of a valid contract. Babayan, 430 F.3d at 136.  To reiterate, for a valid enforceable contract to exist, the essential terms must be definite enough to evince the parties' intent to be bound thereby and the agreement must be supported by adequate consideration.  See, e.g., Blair and Hudyaka, both supra.  Here, the plaintiff appears to be endeavoring to allege that some type of employment contract existed between the parties and that "[t]he aforesaid pattern of

misconduct and deception of defendants constitute a material breach of statutory, express and/or implied as a matter of law contractual obligations, including third party beneficiary, of Defendants, to which Plaintiff detrimentally relied." (Complaint, ¶22).  Given that it is impossible to determine from the face of the complaint what the terms of this alleged contract are or whether in fact the parties intended or agreed to be bound by those terms, we find dismissal of this claim to be warranted as well.  For these reasons, Count III is also dismissed.

**4.   Dismissal of Plaintiff's Discrimination and Retaliation Claims.**

Count II of the Complaint seeks to recover damages under the theories of wrongful termination/discharge, discrimination and retaliation.

Again, the factual basis for Plaintiff's purported discrimination/retaliation claim is unclear.  Both Title VII of the Civil Rights Act of 1964 42 U.S.C. §§2000e-2, 2000e-3, and the Pennsylvania Human Relations Act, 43 P.S. §955(a), (d) prohibit employment discrimination and retaliation on the basis of race, color, religion, sex or national origin.  Disability discrimination is also made unlawful by the Americans with Disabilities Act, 42 U.S.C. §12112(a) and again the PHRA provides likewise.  43 P.S. §455(a).  The PHRA is construed and applied in the same manner as are the federal discrimination statutes. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).  As

a precondition for filing suit under Title VII, the ADA and the PHRA, a plaintiff must exhaust a claim by presenting it in an administrative charge to the EEOC and the PHRC.  Nerosa v. Storecast Merchandising Corp., Civ. A. No. 02-440, 2002 U.S. Dist. LEXIS 16210, *10-*11 (E.D. Pa. Aug. 28, 2002) citing Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996); Fakete v. Aetna, Inc., 152 F.Supp.2d 722, 731 (E.D. Pa. 2001) and Deily v. Waste Management of Allentown, 118 F. Supp. 2d 539, 541 (E.D. Pa. 2000).

 To state a claim for discrimination under Title VII (and the PHRA), the plaintiff here must show by a preponderance of the evidence that (1) he was a member of a protected class, (2) he was qualified for the position from which he was (3) terminated, (4) under circumstances which raise an inference of discriminatory action, the employer searched for or replaced the plaintiff with an individual not within the protected class with qualifications similar to those which the plaintiff possessed.  See, Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003); Hodson v. Alpine Manor, Inc., 512 F.Supp.2d 373, 385-386 (W.D. Pa. 2007).  In so far as Mr. Cosme fails to allege anything in his complaint other than the fact of his termination, including that he has exhausted his administrative remedies, we must grant the defendants' motion to dismiss his claims for

discrimination and retaliation in Count II of his complaint.[1]

Based upon all of the foregoing, we shall grant the Defendants' Motion to Dismiss and/or Strike the Complaint in part pursuant to the attached order.[2]

---

[1] We note that Defendants do not appear to be seeking the dismissal of Plaintiff's claim for wrongful discharge, also contained in Count II of his complaint. This is appropriate as despite Pennsylvania's adherence to the at-will employment doctrine, an employer has no right to discharge even an at-will employee if the firing would contravene a clear public policy or if it is effected with the specific intent to harm the employee. A dismissal which is improper for either reason may be remedied by a tort action in wrongful discharge. Scott v. Extracorporeal, Inc., 376 Pa. Super. 90, 95, 545 A.2d 334, 336 (1988), citing, *inter alia*, Darlington v. General Electric, Inc., 350 Pa. Super. 183, 504 A.2d 306 (1986); Veno v. Meredith, 357 Pa. Super. 85, 515 A.2d 571 (1986). See Also, Geary v. U.S. Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (1974). The Pennsylvania Worker's Compensation Act has been held to provide a basis for finding that termination of an at-will employee for filing a worker's compensation claim violates public policy. Shick v. Shirey, 552 Pa. 590, 603, 716 A.2d 1231, 1237 (1998). Thus, we find that the plaintiff's complaint does sufficiently plead a cause of action for wrongful discharge under Pennsylvania law.

[2] Given our outright dismissal of Counts I and III such that the only remaining claim is that for wrongful discharge, we decline to address in great detail the defendants' remaining arguments in support of their motion to strike the plaintiff's demand for statutory, punitive and other damages. Suffice it to say that we find that Plaintiff has pled adequate facts which may *potentially* entitle him to recover those items of damage under the wrongful discharge theory. Defendants remain free, of course, to renew their arguments at the summary judgment stage of these proceedings.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
MARCOS D. COSME                    : CIVIL ACTION
                                   :
     vs.                           :
                                   : NO. 07-CV-3153
STEVE DURHAM, 99 WEST, INC.,       :
d/b/a 99 RESTAURANT & PUB,         :
TC & C ENTERPRISES, INC.,          :
d/b/a O'CHARLIES and d/b/a         :
O'CHARLEY'S, INC.,                 :
O'CHARLEY'S, INC. ENTERPRISE,      :
d/b/a O'CHARLEY'S, INC.            :
```

### ORDER

     AND NOW, this    4th    day of February, 2008, upon consideration of Defendants' Motion to Dismiss and/or Strike the Plaintiff's Complaint (Docket No. 4) and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and Counts I and III and those portions of Count II which purport to state causes of action for Discrimination and/or Retaliation are DISMISSED with prejudice.

    IT IS FURTHER ORDERED that the Defendants are DIRECTED to file an Answer to the remaining claim for wrongful discharge within twenty (20) days of the entry date of this Order.

                                               BY THE COURT:

                                               s/J. Curtis Joyner
                                               J. CURTIS JOYNER,       J.

15